UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION AT LEXINGTON**

| | |
|---|---|
| LENORE CRUTCHFIELD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Case No. |
| v. ) | 5:17-cv-443-JMH |
| ) | |
| NANCY C. BERRYHILL, ) | **MEMORANDUM OPINION** |
| ACTING COMMISSIONER OF SOCIAL ) | **AND ORDER** |
| SECURITY,[1] ) | |
| ) | |
| Defendant. ) | |

\*\*\*

Plaintiff, Lenore Crutchfield, proceeding *pro se*,[2] brings this matter under 42 U.S.C. § 405(g) seeking judicial review of an administrative decision of the Acting Commissioner of Social Security. [DE 1]. The Court, having reviewed the record and the motions filed by the parties, [DE 12, 14], will **AFFIRM** the Commissioner's decision as no legal error occurred and it is supported by substantial evidence.

## I. STANDARD FOR DETERMINING DISABILITY

Under the Social Security Act, a disability is defined as "inability to engage in any substantial gainful activity by reason

---

[1] Andrew Saul was sworn in as the Commissioner of Social Security on June 17, 2019. Still, Nancy Berryhill was serving as Acting Commissioner of Social Security when this action was filed.

[2] This Court notes that Crutchfield is proceeding *pro* se, without the assistance of an attorney, and that this Court construes such motions more leniently than motions prepared by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Castro v. United* States, 540 U.S. 375, 381-83 (2003).

of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In determining disability, an Administrative Law Judge ("ALJ") uses a five-step analysis. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). Step One considers whether the claimant is still performing substantial gainful activity; Step Two, whether any of the claimant's impairments are "severe"; Step Three, whether the impairments meet or equal a listing in the Listing of Impairments; Step Four, whether the claimant can still perform his past relevant work; and Step Five, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *Id.*; *see also Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

## II. PROCEDURAL AND FACTUAL HISTORY

The Plaintiff, Lenore Crutchfield ("Crutchfield"), filed her application for supplemental security income ("SSI") under Title XVI of the Social Security Act in December of 2013. [TR 188-192]. Crutchfield alleges she became disabled in September 2012. [TR 188]. The claim was denied initially and upon reconsideration. [TR 86-115]. Crutchfield then pursued her claims at a hearing in front of an ALJ, Davida Isaacs, on April 27, 2016. [TR 36-60].

2

The ALJ issued a decision on June 14, 2016, denying Crutchfield's claims and finding that she was not disabled within the meaning of the Act. [TR 9-20]. The Appeals Council denied review, [TR 1-4], making the ALJ's decision final for purposes of judicial review. *See* 20 C.F.R. § 416.1481.

This appeal followed pursuant to 42 U.S.C. § 405(g). [DE 1]. Consistent with the Court's Standing Scheduling Order, [DE 5], the parties have submitted cross motions for summary judgment,[3] which are ripe for review. [DE 12, 14].

Crutchfield alleges onset of disability at age 35 when she claims her disability began and at age 39 when the ALJ issued her decision in June 2016. [TR 188]. Crutchfield has a high school education. [TR 231]. She engaged in past relevant work as a hair stylist. [Id.].

Crutchfield claims disability due to right ankle fracture with posttraumatic arthritis, osteoarthritis, and obesity. At the hearing in front of the ALJ, Crutchfield testified that her right ankle and left foot caused her sever pain. [TR 43-44]. She stated that she uses crutches most of the time and the she had pain while sitting, standing, and walking. [TR 45]. Crutchfield further stated that had depression, which made her irritable around people and not want to engage in social activity. [TR 51].

---

[3] Crutchfield filed a motion styled, "Motion to Review," [DE 12], which we construe as a cross-motion for summary judgment.

3

Crutchfield testified that she lives with her three minor children at home. [TR 40]. Crutchfield reported that her three and four-year old children are able to do a lot on their own. [TR 48]. Crutchfield further testified that she stays at home in bed most of the time. [TR 52].

Crutchfield fractured her right ankle due to a fall in 2007. [TR 373, 376]. She had surgery for this injury but continued to work after the surgery and treatment. [TR 198].

From October 2012 to January 2016, Crutchfield was examined by a podiatrist, Heather Whitesel, D.P.M., on seven separate occasions. [TR 316-19, 479-91, 499-504]. She complained that she had injured her left foot while stepping off the curb. [TR 503-503]. Crutchfield's feet were X-rayed, revealing no acute abnormality in her left foot, but osteoarthritis in her previously injured right ankle. [TR 438]. Crutchfield received a corticosteroid injection and reported that she had decreased pain. [TR 499-500].

In April 2014, Dr. Whitesel completed a medical statement, listing Crutchfield's diagnoses as ankle arthritis, edema, and low limb pain. [TR 909]. Whitesel concluded that Crutchfield could stand 15-30 minutes at a time but would need to elevate her legs occasionally to frequently. [Id.]. She further opined that Crutchfield required an assistive device to walk on uneven surfaces. [TR 909-10].

4

Two months later, Crutchfield returned to Whitesel, complaining of left foot pain. [TR 318-19]. X-rays showed evidence of a stress fracture at three metatarsals. [TR 318]. Crutchfield returned in August, with no new signs of fracture, dislocation. [TR 316]. Crutchfield complained of only intermittent discomfort. [TR 316-17].

Crutchfield next went to Whitesel with new complaints of pain in her left foot in February of 2015. [TR 488-91]. X-rays revealed post-traumatic degenerative disc disease of the ankle. [TR 490]. However, Crutchfield stated that she did not want to undergo an ankle fusion surgery. [TR 483-491]. At her August follow-up, Crutchfield complained of right ankle pain, and Whitesel referred her to therapy. [TR 483-86].

Crutchfield's most recent appointment with Whitesel was in January 2016. Whitesel informed Crutchfield that she should attempt to maintain ankle flexibility, but that Crutchfield might be a candidate for ankle fusion or replacement surgeries as her post-traumatic degenerative disc disease of the ankle progressed. [TR 481].

Crutchfield also treated with John Stewart, M.D. for pain on occasion between 2013 and 2016. He prescribed her medication for her pain, but only occasionally recorded relevant musculoskeletal examination findings, which were often inconsistent. [TR 300, 536, 547, 557, 573, 640, 665, 683, 696]. Stewart also prescribed

5

Crutchfield an anti-depressant in June 2015 due to her claim that she was undergoing high stress due to her children being home during the summer. [TR 570, 578]. This continued despite Crutchfield's report that she had stable or even good moods on other occasions. [TR 509, 521, 526, 536, 541, 547, 557, 562, 573, 577, 588, 593, 593, 604, 614, 618, 626, 640, 665, 684, 691, and 696].

Finally, Crutchfield was examined by a consultative examiner, Barry Burchett, M.D., in conjunction with her SSI claim. [TR 310-15]. Once again, Crutchfield complain of right ankle pain and problems with her left foot. [Id.]. On examination, Burchett found Crutchfield to have obesity, mild difficulty performing a tandem gait, squatting, knee flexion, and a reduced range of motion. [Id.]. All other findings were normal. Burchett did not offer an opinion as to Crutchfield's function limitations. [Id.].

After the hearing and considering all the evidence, the ALJ issued his decision on June 14, 2016. [TR 188]. At Step One, the ALJ determined that Crutchfield had not engaged in substantial gainful activity since December 23, 2013. [TR 11].

At Step Two, the ALJ found that Plaintiff suffered from the following severe impairments: right ankle fracture with posttraumatic arthritis, osteoarthritis, and obesity. [TR 12].

But, at Step Three, the ALJ found that none of those impairments or combination or impairment met or medically equaled

6

the severity of any of the listed impairments. [TR 13-24]. In reaching this conclusion, the ALJ found that Plaintiff had met her burden of presenting medical evidence to support a finding that Crutchfield has physical impairments within the meaning of the application regulation. [TR 13]. In particular, the ALJ stated that the medical evidence, "demonstrates degenerative joint disease with a history of fractures and carpal tunnel syndrome, however the record is absent evidence of any bony abnormality or neurologic deficit resulting in sustained disturbance of gross/fine manipulation or ineffective ambulation as noted in Listings 1.02 and 11.14." [TR 14]. In addition, the ALJ considered Crutchfield's obesity as a potential cause of functional limitation, however the ALJ found that the obesity did, "...not meet or medically equal any listed impairment or increase any other impairment to listing level severity." [Id.].

Before proceeding to Step Four, the ALJ found that Crutchfield had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. 416.967(b). [TR 14]. Specifically, the ALJ found that Plaintiff could perform the following tasks:

> [S]he can lift and carry 20 pounds occasionally and ten pounds frequently; stand and walk no more than two hours in an eight-hour workday; sit up to six hours in an eight-hour workday; can stand/walk for no more than 20 minutes then needs to sit for at least 30 minutes; never balancing on uneven surfaces; no pushing and pulling with the lower extremities; never climb ladders, ropes, or

7

>     scaffolds; no more than occasionally climbing of
>     ramps and stairs, stooping, crawling and kneeling;
>     can only crouch less than occasionally; must avoid
>     exposure to whole body vibration; requires an
>     assistive device for walking; and would be off
>     task up to five percent of the workday.

[TR 14].

The ALJ then concluded, at Step Four, that Crutchfield is unable to perform any past relevant work as a hair stylist, which is light in exertion and skilled, [TR 19], which exceed Crutchfield's residual functional capacity, in particular her ability to stand for only short periods of time. [TR 19].

In addition, the ALJ determined that, given Crutchfield's age, education, work experience, and RFC, "there are other jobs that exist in significant numbers in the national economy that the claimant also can perform." [*Id.*]. The ALJ based her conclusion on testimony from a vocational expert ("VE") that, given the above factors, that Crutchfield would be able to perform the requirements of occupations such as operator (97,252 jobs in the national economy), telephone clerk (87,132 jobs in the national economy), and order clerk (69,822 jobs in the national economy). [TR 20]. As a result, the ALJ determined Crutchfield is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. [Id.]. Thus, the ALJ determined that Crutchfield was not disabled under the Social Security Act. [TR 20].

Crutchfield disagrees. [DE 12]. She argues the ALJ's decision was incorrect on two grounds. [Id.]. First, Crutchfield challenges the ALJ's finding that her symptom testimony was not credible. [Id. at 1-2, PageID #950-51]. Second, she argues that, at Step Five, the ALJ should have relied on Kentucky job numbers rather than on the national job numbers. [Id. at 2, PageID #951]. The Commissioner contends that the ALJ's decision was proper and should be affirmed.

### III. STANDARD OF REVIEW

When reviewing the ALJ's ruling, this Court may not "'try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility.'" *Ulman v. Comm'r of Soc. Sec*, 693 F.3d 709, 713 (6th Cir. 2012) (quoting *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)). This Court determines only whether the ALJ's ruling is supported by substantial evidence and was made pursuant to proper legal standards. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. We are to affirm the decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

IV. ANALYSIS

As noted above, Crutchfield argues that the ALJ was incorrect in finding that her symptom testimony was not credible. [DE 12. at 1-2, PageID #950-51]. Second, she argues that, at Step Five, the ALJ should have relied on Kentucky job numbers rather than on the national job numbers. [Id. at 2, PageID #951]. We disagree.

A. **The ALJ's Determination that Crutchfield's Symptom Testimony was not Credible is Supported by Substantial Evidence.**

Crutchfield argues that, between Step 3 and 4, the ALJ incorrectly determined that her subjective description of her symptoms were not consistent with the rest of the record. [DE 12. at 1-2, PageID #950-51]. Crutchfield's argument is without merit.

The ALJ considers residual function capacity between steps three and four of the sequential analysis. The RFC is "the most [she] can do despite [her] impairments. *See* 20 C.F.R. §§ 404.1520(a)(4), 404.1545(a)(1), (5). The RFC finding is an administrative finding of fact, assessed by the ALJ, who is required to make this assessment "based on all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). The ALJ is required to consider all medically determinable impairments, both severe and non-severe, in determining residual function capacity. 20 C.F.R. § 404.1545(a)(2).

In the instant case, the ALJ found that ALJ found that Crutchfield had the RFC to perform light work as defined in 20

10

C.F.R. 416.967(b). [TR 14]. Specifically, as discussed above, the ALJ found that Plaintiff could perform the following tasks:

> [S]he can lift and carry 20 pounds occasionally and ten pounds frequently; stand and walk no more than two hours in an eight-hour workday; sit up to six hours in an eight-hour workday; can stand/walk for no more than 20 minutes then needs to sit for at least 30 minutes; never balancing on uneven surfaces; no pushing and pulling with the lower extremities; never climb ladders, ropes, or scaffolds; no more than occasionally climbing of ramps and stairs, stooping, crawling and kneeling; can only crouch less than occasionally; must avoid exposure to whole body vibration; requires an assistive device for walking; and would be off task up to five percent of the workday.

[TR 14].

In making her RFC finding for a range of light work, the ALJ considered Crutchfield's medical records, medical opinion evidence as well as Crutchfield's own subjective reports and testimony. The ALJ found that the evidence shows that Crutchfield maintained basic functionality, despite her right ankle and occasional left foot pain. [TR 300, 536, 547, 557, 573, 593, 640, 665, 683, 696]. Dr. Whitesel's opinion is also consistent with the ALJ's RFC finding. [TR 14, 909-10].

However, the ALJ found that the Crutchfield's testimony at the hearing was inconsistent with the objective medical evidence, her daily activities, and her work activity. [TR 15, 17-18].

The Sixth Circuit has held that the ALJ's evaluation of a claimant's testimony is entitled to deference by this Court. *Cruse*

*v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007). As stated previously, "The Court may not re-weigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion." *Putman v. Astrue*, 2009 WL 838155 at *5 (E.D. Tenn. Mar. 30, 2009). So long as the ALJ cited substantial evidence to support his conclusions, this Court may not re-evaluate his determinations. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012).

In doing so, the ALJ is entitled to rely on her own observations. *See Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). In addition, the ALJ may also discount witness credibility when a claimant's testimony contradicts the medical records and other evidence. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

The ALJ appropriately did so here. *See* 20 C.F.R. § 404.1529(c)(4) ("We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence, including your history, the signs and laboratory findings, and statements by your treating and nontreating source or other persons about how your symptoms affect you."); *see also*, *Torres v. Comm'r of Soc. Sec.*, 490 F. App'x 748, 754 (6th Cir. 2012) (unpublished) (allegations of impairments could be considered inconsistent with

12

claimant's own testimony about the daily activities she is able to perform).

The ALJ discounted Crutchfield's subjective complaints as inconsistent with the entirety of the evidence. First, the ALJ noted the inconsistency between Crutchfield's claim that she could only sit for 10-20 minutes, stand less than 20 minutes, and used crutches for balance and the fact that she sat for an hour and fifteen minutes during the hearing without shifting or standing. [TR 310-15, 909]. Second, the ALJ found that Crutchfield's testimony, [TR 48-50], that that her young children were independent is inconsistent with the fact that she declined surgery for her ankle citing her active young children. [TR 18]. The ALJ also found her testimony about her life activities inconsistent with the evidence that her "independent" children would have been a newborn and one year old at the time of her alleged disability onset date. [TR 40; 295-297]. Finally, the ALJ found inconsistency in Crutchfield's testimony that she stopped working after September 2012, the alleged onset date, and her medical records, which indicated that she continued to work. [TR 18].

Clearly, the objective medical and mental health evidence supported the ALJ's conclusion that Plaintiff's allegations regarding the severity of her symptoms were not fully believable. As a result, the ALJ's analysis of Crutchfield's subjective complaint were supported by substantial evidence. *Bowman v.*

13

*Chater*, No. 96-3990, 1997 WL 764419, at *5 (6th Cir. Nov. 26, 1997) (unpublished). Accordingly, we find that the the ALJ's decision should be affirmed.

**B. The ALJ did not Err when she Considered the Number of Jobs in the National Economy Rather than the Local Economy.**

Crutchfield next argues the ALJ should have relied on Kentucky job numbers rather than on the national job numbers. [Id. at 2, PageID #951]. This, she implies, warrants a remand. [Id.]. Crutchfield's argument is misplaced and incorrect as a matter of law.

"The Act, its legislative history and the regulations make it clear that the test is whether work exists in the national economy, not in plaintiff's neighborhood." *Harmon v. Apfel*, 168 F.3d 289, 292 (6th Cir. 1999). Moreover, the relevant regulations provide that "[i]t does not matter whether ... (1) [w]ork exists in the immediate area in which you live; (2) [a] specific job vacancy exists for [the claimant]; or (3) [the claimant] would be hired if [she] applied for work." 20 C.F.R. § 416.966(a). Thus, the ALJ need only consider whether work exists in the national economy. *See* 20 C.F.R. §§ 416.905(a), 416.966. As a result, the Sixth Circuit has held, "[W]hen there is testimony that a significant number of jobs exists for which a claimant is qualified, it is immaterial that this number is a small percentage of the total

number of jobs in a given area." *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988).

At Step Five, the ALJ found that Crutchfield could perform other work existing in significant numbers in the national economy. [TR 19]. The ALJ based this finding testimony from a vocational expert ("VE") that, given the above factors, that Crutchfield would be able to perform the requirements of occupations such as operator (97,252 jobs in the national economy), telephone clerk (87,132 jobs in the national economy), and order clerk (69,822 jobs in the national economy). [TR 20].

The location she has chosen to live in relation to available jobs is an extrinsic factor and is irrelevant to a disability determination. *See Harmon*, 168 F.3d at 293. The VE's testimony provided substantial evidence that Crutchfield is not disabled, and the ALJ's denial of her request for benefits was proper. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512-13 (6th Cir. 2010) ("Substantial evidence may be produced through reliance on the testimony of a vocational expert (VE) in response to a hypothetical question, but only if the question accurately portrays [a claimant's] individual physical and mental impairments.") (internal quotations and citation omitted). Accordingly, we find that ALJ's decision should be affirmed.

## V. CONCLUSION

The Court, having found no legal error on the part of the ALJ and that his decision is supported by substantial evidence, the Acting Commissioner's final decision is **AFFIRMED**.

Accordingly, it is hereby **ORDERED** as follows:

(1) Plaintiff's Motion for Summary Judgment [DE 12] is **DENIED**;

(2) Defendant's Motion for Summary Judgment [DE 14] is **GRANTED**; and

(3) Judgment in favor of the Defendant will be entered contemporaneously herewith.

This the 19th day of September, 2019.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge